### SCHROEDER, Appellant, v. LaCHOY FOOD PRODUCTS DIVISION OF BEATRICE FOODS COMPANY, Appellee.

Common Pleas Court, Fulton County.

No. 13297. Decided December 2, 1953.

James L. Frey, James W. Williamson, Wauseon, for appellant. C. William O'Neill, Atty. Genl., John W. Hardwick, Asst. Atty. Genl., Columbus, for Bureau of Unemployment Compensation.

## OPINION

By VAN BUREN, J.

In this case, claimant was in the employment of the LaChoy Products Division of the Beatrice Foods Company, Archbold, Ohio, for a period of time from 1946 until December, 1952.

Due to lack of work, claimant was separated from that employment on December 12, 1952.

She duly filed notice of claim for benefits with the Wauseon office of the Ohio Bureau of Unemployment Compensation, which claim was then questioned by a firm of so-called "consulting actuaries," representing the Beatrice Foods Company.

Thereafter, a hearing was had before a referee of said bureau of Wauseon, Ohio, the county seat of Fulton county. at which hearing the testimony of claimant was taken. No other witness than claimant testified at this hearing. She was not represented by counsel at that time, although the LaChoy Food Products Division of the Beatrice Foods Company appeared and participated in the examination and cross-examination of claimant by a representative of said firm of so-called "consulting actuaries."

In this respect, the case is almost identical with the facts and law appearing in the **Nofzinger case, 52 O. O. 396,** being numbered 13295 in the docket of the Fulton County Common Pleas Court, which was decided yesterday, December 2, 1953, and to which decision specific reference is herein made. The cases and statutes there quoted are similarly applicable and determinative of the issues in this case, in the opinion of the court.

Here, too, it was the clear, undisputed testimony of Mrs. Schroeder that she made regular efforts to find employment in the village of Archbold, Ohio after she was laid off by the LaChoy Products Division of the Beatrice Foods Company. Sometimes two possible places of work were visited each week, and, at times, she said: (Record page 7)

"I went as high as three places a week and asked for work."

Mrs. Schroeder testified: (Record page 9)

"They (the Wauseon office of Unemployment Compensation) said that we should at least ask two people so I aimed each week to ask two and sometimes if it came in handy and I had to go to town, I would ask there again. A couple of times, I asked three places."

It is clear from her testimony that she contacted, in the village of Archbold, local markets, bakeries, hardware stores, the A & P and Kroger grocery stores, and a number of other places. She said: (Record page 12)

**"Our town is so small that there are just not too many places**

to ask, and if they required two, well you thought that was what you were to ask, really, and if you had two, you really did your duty, because there are not too many places in our small town at which a lady can work." (Emphasis ours.)

Again, on page 18 of the record, the question was asked of claimant:

"Then you stated that the **opportunities for employment are highly limited in the Archbold area?**

"A. Yes."

Claimant's physical condition is something again, which appears in the record, and concerning which apparently no attention was paid by the referee or reviewing authorities.

Claimant testified: (Record page 12)

"Q. Now, I believe you said you have high blood pressure?

"A. I have. I lost the eyesight of one eye through it. That was when I was candling eggs at Eicher's. That is when I lost the eyesight of one eye."

Specific attention should be called, also, in the opinion of the court, to the examination of the claimant by the representative of the so-called "consulting actuaries" employed by the LaChoy Products Division of the Beatrice Foods Company (Record page 19) asking about possible employment in towns or villages other than Archbold, Ohio. The question was asked:

"Now in reporting to the Wauseon office each week, were you interested in securing employment in Wauseon if it were available to you?

"A. Not too interested. I had been to a couple of factories the year before, and of course, **the one factory up north won't hire women of my age any more.**"

"Q. How far is it from Archbold to Wauseon?

"A. Is it eighteen? I couldn't exactly tell you.

"Q. Is it about twelve miles?

"A. I think it's a little further than that, if I ain't mistaken. See, **in quite a few factories they have an age limit, and you can't get in if you're so old.**" (Emphasis ours.)

It seems to the court that such inquiry is beyond the proper, legal scope of examination on a question of allowance or disallowance of benefits after lay-off from work.

Carried out a little further, claimant could have been asked about going to Toledo, or Detroit, or Chicago. The **reductio ad absurdum** of such an inquiry is that claimants in these cases would have to conduct their search for employment to other towns and cities until they actually found employment, in which event, no claims for benefits would ever be allowed.

For the above reasons and the reasons set forth in the

Nofzinger case, cited supra, it is the opinion of the court that the decision of the referee in this case, and the decision of the Board of Review of the Bureau of Unemployment Compensation affirming such decision of the referee, one member of said board having dissented, are unreasonable, unlawful and against the manifest weight of the evidence.

Judgment will be given for the appellant in this case.